UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Joan Marie Robtoy,

      Plaintiff,

v.                                                        Civil Action No. 5:10-cv-301

Social Security Administration,
Commissioner,

      Defendant.

## REPORT AND RECOMMENDATION
(Docs. 3, 5)

Plaintiff Joan Robtoy brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Robtoy's motion to reverse the Commissioner's decision (Doc. 3), and the Commissioner's motion to affirm (Doc. 5).

For the reasons stated below, I recommend granting the Commissioner's motion, and denying Robtoy's motion. Pursuant to Local Rule 7(a)(6), and no party having made a request for oral argument, I find that oral argument is not required.

## Background

Robtoy was born on March 14, 1966, and thus was thirty-nine years old on the alleged disability onset date of December 31, 2005. (Administrative Record ("AR") 144, 149.) She completed high school and then attended cosmetology training school, earning

her cosmetology certificate. (AR 30, 154, 384.) Robtoy worked as a hairdresser for approximately twenty years, from 1988 until 2006, when she quit and began making plans to convert her home into a salon. (AR 31-32, 149-50, 307, 312.) She is married and has nine-year old twins. (AR 30, 312, 383.) In 2005, her husband was injured at work, and has since been unable to return to work. (AR 307.)

Robtoy has been treated for depression since 2000, when her first pregnancy ended with the stillborn birth of her daughter. (AR 307.) She has a history of back pain, which may have been exacerbated by her twin pregnancy. (AR 36, 307, 312.) She is obese, which is also likely to aggravate her back pain. (AR 30.) In addition to her depression and back pain, Robtoy's medical history includes gestational diabetes, type 2 diabetes, and asthma, all of which appear to be managed on medication. (*See, e.g.*, AR 218, 220-21, 223, 225, 245-46, 251, 253, 268, 270, 284, 287, 289, 403-04, 409.) A typical day for Robtoy involves attending to her children before they leave for school in the morning, sitting on the couch, watching television, napping, doing household chores, interacting with her children after they return from school, preparing dinner for the family, bathing her children, and putting her children to bed. (AR 38-39, 165, 179, 308.) Additionally, Robtoy attends church every Sunday (AR 169), and occasionally cuts the hair of her family and close friends, out of her home (AR 32-33).

On or around July 24, 2008, Robtoy filed applications for supplemental security income and disability insurance benefits ("DIB"). (AR 134-39.) The applications were denied initially and on reconsideration. (AR 55-65, 67-72.) Pursuant to her DIB application, Robtoy alleges that, starting on December 31, 2005, she became unable to

work as a result of her depression, chronic back pain, and asthma. (AR 149.) She claims that these impairments limit her ability to work because she cannot concentrate, is "unable to make even easy decisions," is not herself, and "can't seem to focus." (*Id.*)

On June 10, 2010, Administrative Law Judge ("ALJ") Paul Martin conducted a hearing on Robtoy's application. (AR 23-54.) Robtoy appeared and testified, and was represented by counsel. (*Id.*) Additionally, vocational expert ("VE") John Bopp was present and testified at the hearing. (AR 44-52.) On July 9, 2010, the ALJ issued a decision finding that Robtoy was not disabled under the Social Security Act from her alleged onset date of December 31, 2005 through the date of the decision. (AR 8-17.) On October 8, 2010, the Decision Review Board affirmed the ALJ's decision, making that decision final. (AR 1-3.) Having exhausted her administrative remedies, Robtoy filed her Complaint in the instant action on December 8, 2010. (*See* Doc. 1.)

## **ALJ Determination**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d).

3

The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

Employing this sequential analysis, ALJ Martin first determined that Robtoy had not engaged in substantial gainful activity since her alleged onset date of December 31, 2005. (AR 10.) At step two, the ALJ found that Robtoy had the severe impairments of spondylolisthesis[1] of the spine, obesity, and depression. (AR 11-12.) Next, the ALJ determined that Robtoy did not have an impairment or combination of impairments that met or medically equaled any impairment contained in the Listing of Impairments in 20 C.F.R. part 404, subpart P, appendix 1 ("the Listings"). (AR 12-13.) The ALJ then

---

[1] "Spondylolisthesis" is defined as "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum." Stedman's Medical Dictionary, 27th ed. (2000), *available at* STEDMANS 382020.

4

determined Robtoy's RFC, finding that she was able to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that she was unable to climb ladders or crawl and could only occasionally climb stairs, balance, stoop, crouch, and kneel. (AR 13.) The ALJ further limited Robtoy to performing only "simple, routine, repetitive tasks." (*Id.*) At step four, the ALJ found that Robtoy could not perform her past relevant work as a hair stylist. (AR 15.) At step five, the ALJ used the Medical-Vocational Rules as a framework to support a finding that Robtoy was "not disabled." (*Id.*) However, finding that Robtoy's ability to perform all or substantially all of the requirements of "light work" was impeded by "additional limitations," the ALJ relied on VE Bopp's testimony to determine that she was capable of performing the requirements of several representative occupations existing in significant numbers in the national economy, including fast food worker, cashier, and housekeeper/cleaner. (AR 16.) The ALJ concluded that Robtoy had not been under a disability, as defined in the Social Security Act, from December 31, 2005, the alleged onset date, through the date of his decision. (AR 16-17.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

5

substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## **Analysis**

I.  **New Evidence**

Robtoy has attached as Exhibit A to her motion a letter drafted by her attorney, Patricia Turley, which includes the relatively recent opinions of her treating psychiatrist, Dr. J.S. Stone. (*See* Doc. 3-1.) This letter constitutes new evidence which is not properly before the Court. The Social Security Act provides that a court may remand a case to the Commissioner to consider additional evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The Second Circuit has summarized this three-pronged requirement as follows:

> [The claimant] must show that the proffered evidence is (1) "new" and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier.

*Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (internal citations and quotation marks omitted); *see also Lisa v. Sec'y of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). With respect to the third prong, generally, in order to show good cause for failure to present the evidence sooner, the plaintiff must "go beyond showing that the proffered evidence did not exist during the pendency of the administrative proceeding[, and must also] establish good cause for failing to produce and present the evidence at that time." *Lisa v. Sec'y of Health & Human Servs.*, 940 F.2d at 45.

7

Robtoy has not alleged that Exhibit A satisfies these requirements, nor has she sought remand for the Commissioner's consideration of the new evidence. In any event, the new evidence is not material for three primary reasons. First, the letter is dated October 26, 2010 and was signed by Dr. Stone on October 28, 2010, almost three years after Robtoy's date last insured; and Dr. Stone's opinions contained therein respond to questions using the present tense and do not state any time frame other than the date of the letter. (*See* Doc. 3-1 at 1-2.) *See Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (to be "material," evidence must be "relevant to the claimant's condition during the time period for which benefits were denied"). Second, the opinions contained in the letter are vague, stating for example merely that Robtoy has "diminished ability to function" and "probability of absenteeism," without explaining the degree of "diminish[ment]" of function and "probability" of absenteeism. (Doc. 3-1 at 1, 2.) Third, no explanation or medical evidence is provided in support of Dr. Stone's opinions.

For these reasons, I recommend that the Court refrain from considering Exhibit A to Robtoy's motion in its substantive analysis of the Commissioner's decision.

## II.     Treating Physician Opinion

Robtoy argues that the ALJ was required to give controlling weight to the opinion of her treating primary care physician, Dr. Christine Payne, particularly with respect to Robtoy's ability to stand and walk. In relevant part, Dr. Payne opined in a letter prepared on July 6, 2009 by Robtoy's attorney that Robtoy could stand or walk for less than two hours in an eight-hour workday. (AR 386-87.)

8

The "treating physician rule" provides that the ALJ must give a treating physician's opinion as to the claimant's disability "controlling weight," so long as that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2); *see Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). Conversely, the ALJ need not give a treating physician's opinion controlling weight where it is contrary to other substantial evidence in the record. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). Applied here, the ALJ was not required to give controlling weight to Dr. Payne's opinion, for several reasons. First, the opinion contains no explanatory notes, and consists entirely of a check-marked worksheet. *See Halloran v. Barnhart*, 362 F.3d at 32 (finding treating physician's response to a multiple-choice question about claimant's ability to sit to be "relatively uninformative"). Second, as the ALJ stated in his decision, the opinion is "not well-supported by Dr. Payne's own clinical observations." (AR 15.) In fact, in a May 2009 treatment note, Dr. Payne stated that Robtoy was able to "move[] fairly comfortably" despite complaints of back pain. (AR 380.) In the same note, Dr. Payne stated that Robtoy was "able to work some as a hairdresser" (a job which requires large amounts of time standing) and was "more limited by depression than pain." (*Id.*)

Third and finally, Dr. Payne's opinion regarding Robtoy's minimal ability to stand or walk is not consistent with other substantial evidence in the record. For example, as the ALJ noted in his decision, in November 2005, less than two months prior to the

9

alleged disability onset date, Robtoy reported to one of her doctors that she was "walking 2 miles 3 times a week." (AR 14, 284.) Likewise, and as the ALJ also noted, in February 2006, during the alleged disability period, Robtoy reported to Dr. Payne that she was "walking regularly." (AR 14, 252.) And in a Medical History Questionnaire dated July 1, 2008, approximately five months prior to the date last insured, Robtoy checked off a box stating "Somewhat active (walk upstairs)" and left blank a box stating "Not active (unable to walk)." (AR 291.) Moreover, and as the ALJ also pointed out, several examining physicians reported that Robtoy exhibited a normal gait at various times during and after the alleged disability period. (AR 223, 226, 352, 413.) Further, Robtoy stated in her Disability Report that her hair stylist job required her to stand for six hours a day (AR 150), and yet she testified at the administrative hearing that she left that job not because of the standing requirement but because of the salon owner's drug use (AR 32). She further testified that, after leaving that hair stylist job, she had the ability to do the same job at another salon but ultimately did not end up in that job because the salon owner hired somebody else. (AR 33.) Additionally, Robtoy stated in her Disability Report that, after the hair stylist job at the salon ended, she styled hair out of her home but was forced to stop doing that job after only three months, again not because of the standing requirement, but rather, "due to [her] depression." (AR 149.) Consistent with this statement, Robtoy testified at the administrative hearing that it is her depression that prevents her from working, and although it would be painful, she could work if back pain was her only impairment. (AR 42; *see also* AR 312 (indicating that Robtoy reported to a medical provider that "the major reason that she cannot work is depression").)

10

All of this evidence supports the ALJ's decision not to afford significant weight to Dr. Payne's opinion regarding Robtoy's ability to stand and walk.

### III. Ability to Sit

Next, Robtoy contends the ALJ erred in finding that she could perform "light work," given that the medical records do not indicate that Robtoy can sit for six hours in an eight-hour workday. (Doc. 3 at 3.) The regulations provide that a job is in the category of "light work" when "it requires a good deal of walking or standing, or when it involves sitting most of the time . . . ." 20 C.F.R. § 404.1567(b). Nonetheless, the full range of light work does not require sitting continuously for six to eight hours in an eight-hour workday. SSR 83-10, 1983 WL 31251, at *6 (1983). Rather, performance of a "light work" job requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday[, *with s]itting . . . occur[ing] intermittently during the remaining time.*" *Id.* (emphasis added); *see Poupore v. Astrue*, 566 F.3d at 305. Moreover, the Second Circuit has held that even "sedentary" jobs – which by definition involve more sitting than "light" jobs, *see* 20 C.F.R. § 404.1567(a), (b); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996) (sedentary jobs generally require sitting for "about 6 hours of an 8-hour workday") – do not "require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." *Halloran v. Barnhart*, 362 F.3d at 33.

Substantial evidence, including Robtoy's own self-reporting, supports the ALJ's determination that Robtoy is able to meet the sitting requirements of "light work." For example, in a Function Report, although Robtoy checked off the boxes marked

11

"[s]tanding" and "[w]alking" to indicate that her conditions "affect[ed]" her ability to stand and walk, she left blank the box marked "[s]itting," indicating that her conditions did not affect her ability to sit. (AR 170.) She further stated in that Report that, as part of her daily activities, she would "sit down and stare out the window for hours." (AR 165.) In a subsequent Function Report, Robtoy stated that, as part of her daily activities, she would "sit and look at the birds and do absolutely nothing." (AR 179.) Similarly, at the administrative hearing, Robtoy testified that a normal day involved "sit[ting] on the couch" and "dozing off," among other things. (AR 38.) This evidence supports the ALJ's determination that Robtoy was capable of sitting at the level required for a "light work" job.

## IV.  Mental RFC/Limitations in Social Functioning

In his mental RFC assessment, the ALJ limited Robtoy to "simple, routine, repetitive tasks," and did not include any limitations in social functioning. (AR 13.) Robtoy argues that the RFC should have included such limitations, and should have accounted for her depression.[2] She further contends that various evidence, including the opinions of treating licensed clinical mental health counselor Suzanne Austin (AR 422) and treating physician Dr. Payne (AR 386), support her claimed mental impairments.

---

[2] Robtoy's fleeting argument that the ALJ failed to apply the "special technique" set forth in 20 C.F.R. § 404.1520a (*see* Doc. 3 at 5) is meritless, given that the ALJ clearly employed this "technique" in his decision (*see* AR 12-13). What Robtoy appears to argue in this section of her motion is merely that there is evidence contrary to the ALJ's decision. (*See* Doc. 3 at 5 ("The ALJ's determination that these limitations were only mild and did not disable her from working is contrary to the evidence and erroneous.").) But the applicable standard is whether the ALJ's decision is supported by substantial evidence, not whether evidence contrary to the ALJ's decision exists. In fact, assuming no legal error, if substantial evidence supports the ALJ's findings, the decision is binding, *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984), and the district court cannot "substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review," *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quotation marks omitted).

12

In defense of his mental RFC determination, the ALJ noted the March 11, 2010 opinion of Austin, which stated that Robtoy "is severely depressed, unable to cope with the tasks of daily living, and is in no way capable of performing substantial gainful activity." (AR 15, 422.) The ALJ correctly discounted this opinion, however, on the basis that the determination of disability (i.e., whether Robtoy was "capable of performing substantial gainful activity") is reserved for the Commissioner. (AR 15.) Specifically, the regulations provide that "[a] statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean that we will determine that you are disabled," because this is an "administrative finding[] that [is] dispositive of [the] case," and thus is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1).

Moreover, Austin's opinion actually asserts what the record reveals – that Robtoy is able to not only care for her own daily needs but also care for the needs of her two young children and her disabled husband, although this "is all [she] can handle." (AR 422.) Further, the opinion is not supported by treatment notes and focuses on situational stressors, including Robtoy's husband's loss of employment and subsequent financial difficulties. (*Id.*) Therefore, the ALJ properly noted that the opinion "is based in part upon [Robtoy's] life circumstances including her spouse's disability and other *factors beyond her ability to function to perform work*." (AR 15 (emphasis added).) Finally, Austin's opinion concludes that Robtoy's "prognosis for vocational improvement is poor due to the lack of available treatment for her back injury, other than prescribed narcotic painkillers." (AR 422.) As a mental health counselor and not a physician, Austin was not qualified to make this opinion, and she conceded that fact, stating in her opinion that

13

she must defer to Robtoy's psychiatrist on the issue of her psychiatric medications because "I am not a physician." (*Id.*) In fact, as discussed above, the record reveals that Robtoy's back pain was not the primary cause of her alleged inability to work, Robtoy herself stating that she could work if she suffered only from her back pain and that the major reason she could not work was her depression. (AR 42, 312.)

With respect to Dr. Payne's opinion regarding Robtoy's mental impairments, it does not provide anything more than minimal support for Robtoy's claim. First, as noted above, the opinion contains no explanatory notes, and consists entirely of a check-marked worksheet. Second, as noted by the ALJ, the opinion indicates only mild or no limitations in every category except ability to "[i]nteract appropriately with the public." (AR 15, 388.) In that category, Dr. Payne opined merely that Robtoy was "moderately" impaired, with "moderately" being defined as causing "[s]light limitations but person is able to function satisfactorily." (AR 388.) As also noted by the ALJ, agency consultant Dr. Richard Morrison agreed with Dr. Payne's minimal limitations regarding Robtoy's mental functioning, opining that "[m]entally, [Robtoy] seems to be intact and should be able to function in most divisions."[3] (AR 15, 315.)

Taking the record as a whole, substantial evidence supports the ALJ's determination that Robtoy had only mild difficulties in social functioning during the alleged disability period. For example, although Robtoy stated in a Function Report that she "never talk[s] to anyone but [her] parents" and that she has "developed a phobia

---

[3] Dr. Morrison further stated that Robtoy's "more serious problems" appear to be associated with her weight and back problems (AR 388), but as noted above, Robtoy has stated that her depression – and not her physical problems – is the primary factor preventing her from being able to work (AR 42, 312).

14

about talking on the phone" (AR 170), she is described in numerous medical notes as being "pleasant" and "cooperative" (AR 306, 383), and she testified at the administrative hearing that she styles hair for her friends and family on approximately two occasions each month (AR 31-32). Further, although it is a struggle, she is able to provide at least the minimal level of care required for a family of four. (AR 38-39.) Moreover, the ALJ did in fact incorporate a mild restriction in social functioning into one of the hypotheticals provided to the VE at the administrative hearing, stating: "[I]n terms of social interactions, please assume an ability to engage in routine interactions with supervisors and coworkers, as well as an ability to interact with the public on an intermittent . . . [or] casual basis, not an intense level." (AR 46.) Upon questioning by the VE, the ALJ clarified the hypothetical, limiting Robtoy to jobs involving no "problem-solving," no "deal[ing] with particular complaints from the public," and no more than "a simple back-and-forth interaction" with members of the public. (AR 47.) These limitations in social functioning more than accounted for the limitations reflected in the record, and the VE found that, even assuming such limitations, there were jobs existing in significant numbers in the national economy that Robtoy could perform.

      Despite Robtoy's contention to the contrary, it was proper for the ALJ to partially rely on the absence of records from Dr. Stone to support his mental RFC determination. The ALJ stated that "Dr. Stone has treated [Robtoy] for an extended period of time and has not described [her] as unable to work." (AR 15.) Dr. Stone's treatment records support this statement (*see, e.g.*, AR 295-300, 342-43, 417-21, 454-55), and the Second Circuit has held that an ALJ "is entitled to rely not only on what the record says, but also

on what it does not say," *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983). Robtoy's attempt to defeat this lack of evidence by submitting to the Court a letter containing Dr. Stone's vague opinions regarding Robtoy's depression almost three years after the date last insured, fails. As discussed above, the Court need not consider this improper and belated evidence, given that it is not "material," meaning there is not a reasonable possibility that it would have influenced the Commissioner to decide Robtoy's application differently. Even if the Court were to consider it, the letter would not provide anything more than minimal, if any, support to Robtoy's claim.

### V. Ability to Do "Other Work"

Next, Robtoy asserts that the VE's testimony both supports her disability application on the one hand, and is flawed on the other. First, in support of the assertion that the VE's testimony supports her application, Robtoy relies on the VE's testimony that, if Robtoy required frequent supervision to ensure she stayed on task, there were no jobs she could perform. It is true that the VE gave such testimony (*see* AR 49); however, the record does not support and the ALJ did not ultimately include such a "frequent supervision" requirement in Robtoy's RFC. It was not error for the ALJ to refrain from relying on the VE's opinion, when that opinion was based on a hypothetical that did not mirror Robtoy's limitations. *See Hanlon v. Comm'r of Soc. Sec.*, No. 5:07-CV-747 (FJS), 2010 WL 5285311, at *6 (N.D.N.Y. Dec. 17, 2010); *Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010) ("The Commissioner may rely on a [VE's] testimony . . . so long as the hypothetical is based on substantial evidence.").

16

Finally, Robtoy claims the VE's testimony is flawed because "[h]e testified that the jobs available were in the regional economy, including both the States of Vermont and New Hampshire," but Robtoy resides only in Vermont, and New Hampshire is "about an hour's drive [away]." (Doc. 3 at 6-7.) This argument fails, given that the regulations provide that work exists in the "national economy" when it exists "in significant numbers . . . in the *region* where [the claimant] live[s]," and it does not matter whether "[w]ork exists in the immediate *area* in which [the claimant] live[s]." 20 C.F.R. § 404.1566(a)(1) (emphases added). The VE found that there were 14,000 jobs in the regional economy that Robtoy could perform, and the ALJ properly adopted that finding. (AR 16, 48.) The VE went a step further, noting that of those 14,000 regional jobs, approximately one-third (4,500) were located in Vermont. (AR 52.) As pointed out by the Commissioner, many of our sister circuits have found that far fewer jobs in the regional economy constituted a significant number at step five of the ALJ's sequential evaluation. (*See* Doc. 5 at 16, citing cases from the Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits.) Therefore, no error was committed with respect to the VE's testimony at step five.

## Conclusion

As discussed above, ALJ Martin conducted a correct analysis of Robtoy's claim in a comprehensive fashion. He cited substantial evidence to support his findings, and discussed the opinions of the relevant medical providers, whether treating or consulting. For these reasons and the other reasons stated herein, I recommend the Commissioner's motion (Doc. 5) be GRANTED, and Robtoy's motion (Doc. 3) be DENIED.

17

Dated at Burlington, in the District of Vermont, this 8th day of July, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).